Eastern District of Kentucky
F I L E D

SEP 07 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-298-GWU

CLYNE CARMACK,                                          PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to
     Step 4. If no, the claimant is not disabled. See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

Carmack

4.     Can the claimant's severe impairment(s) be expected to result
       in death or last for a continuous period of at least 12 months?
       If yes, proceed to Step 5.  If no, the claimant is not disabled.
       See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of
       impairments meeting or equaling in severity an impairment
       listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
       Impairments)? If yes, the claimant is disabled. If no, proceed
       to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a),
       416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his
       residual functional capacity and the physical and mental
       demands of the work he has done in the past, still perform this
       kind of past relevant work?  If yes, the claimant was not
       disabled.   If no, proceed to Step 7.   See 20 C.F.R.
       404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his
       residual functional capacity, age, education, and past work
       experience, do other work--i.e., any other substantial gainful
       activity which exists in the national economy? If yes, the
       claimant is not disabled.   See 20 C.F.R. 404.1505(a),
       404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.  Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence.  Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment. The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987). Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Carmack

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Carmack

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).    Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.    Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Clyne Carmack, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of illiteracy and borderline intellectual functioning. (Tr. 16).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Carmack retained the residual functional capacity to perform a significant number jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 18-20).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 37 years, marginal education, and no past relevant work experience could perform any jobs if he had no exertional limitations, but was restricted only to the performance of simple tasks in routine, task-oriented work settings, that did not require literacy. (Tr. 264).  The VE responded that there were jobs at the medium and light levels that such a person could perform, and proceeded

7

to give the numbers in which they existed in the state and national economies. (Tr. 264-5). Alternatively, if the person's limitations were described as a "moderately limited" ability to deal with the public, respond appropriately to routine changes in the work setting, carry out detailed instructions, maintain attention and concentration, and perform within a schedule, maintaining regular attendance, and being punctual within customary tolerances, the VE testified that the jobs and job numbers she had given would still be available. (Tr. 265).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Carmack alleged disability due to a limited education, nervousness, diabetes, depression, and back and leg pain. (Tr. 53). He testified that he had never worked any jobs for a long period of time, had been incarcerated from 1991 to 1993, and in 1999 to 2002 on drug-related charges, and had also been jailed in August and September, 2003 for driving under the influence. (Tr. 244-6). He had been doing some jobs for his cousin's furniture store prior to the DUI, such as moving furniture, but felt he was unable to lift because of pancreatitis. (Tr. 240, 248). He admitted that the pancreatitis had been caused by alcohol abuse, but he had stopped drinking after being put in jail, and had not had any pancreatic attacks since. (Tr. 250-1). He also complained of back pain, and diabetes for which he took Insulin. (Tr. 252, 257). As far as his education was concerned, Mr. Carmack

8

testified that he thought he had only completed the sixth grade, although he had attended high school classes for a few weeks, and had never been able to earn his GED.  (Tr. 246-7, 263).  He was able to read some small words, but not a newspaper.  (Tr. 247).  He had taken and passed his driver's license examination orally.  (Tr. 247).

The evidence regarding the plaintiff's physical impairments is limited.

Mr. Carmack submitted evidence from the Kentucky State Reformatory Hospital, where he was treated in January and February, 2001 for complaints of right hip pain, but a physical examination was largely normal and there were no clinical signs of radiculopathy.  (Tr. 84-5).  He was discharged back to jail with restriction of doing no lifting for 30 days.  (Tr. 81).  Mr. Carmack was seen at a clinic  in the summer of 2002 for a left foot injury after he had been involved in a "four wheeler" accident, but a left foot x-ray was negative.  (Tr. 128-9).  He was hospitalized in September, 2002 for acute pancreatitis, apparently after "binge drinking" for the previous week.  (Tr. 140).  A history of "glucose intolerance" was also mentioned, blood sugars were elevated on testing, and an oral medication for diabetes was given, along with advice not to use alcohol and to avoid spicy or fatty foods.  (Tr. 140-1).

A state agency physician who reviewed the record at this point concluded that the pancreatitis was secondary to alcohol abuse and had improved, and that the

plaintiff's non-insulin-dependent diabetes mellitus had not shown any end organ damage. (Tr. 213). In his opinion, Mr. Carmack's physical conditions were not "severe." (Id.).

Finally, Mr. Carmack was hospitalized in August, 2003 for another episode of pancreatitis and, once again, his blood sugars were found to be elevated. (Tr. 225, 228). On this occasion he was treated with Insulin, and, with this medication, his diabetes was controlled. (Tr. 228). No functional restrictions were suggested.

The plaintiff argues on appeal that the ALJ should have ordered a consultative physical examination, but as noted in the Applicable Law section of this opinion, it is the plaintiff's responsibility to prove his own case, and the ALJ is not required to refer the plaintiff for a consultative examination. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986).

The plaintiff's primary argument focuses on Mr. Carmack's mental status.

A consultative psychological evaluation by Dr. Dennis Spjut, a psychologist, in August, 2002 included IQ testing which produced a verbal IQ score of 69, a performance IQ score of 65, and a full-scale IQ score of 65. (Tr. 136). Dr. Spjut indicated that the scores were a valid measure of the plaintiff's current level of functioning, and diagnosed mild mental retardation. (Tr. 135,138). His testing also showed a reading ability at the first grade level. (Tr. 137). Dr. Spjut opined that the plaintiff's conditions included mild mental retardation, a reading disorder,

10

bereavement, a depressive disorder, nicotine dependence, dysthymia, and an occupational problem. (Tr. 138). He felt that Mr. Carmack would have difficulty with detailed instructions and occasionally have difficulty with simple instructions, his attention and concentration would be variable, he might be distractible if working in coordination with or proximity to others, and he would have trouble interacting with the general public, but likely would be able to accept appropriate criticism from supervisors. (Id.).

A state agency psychologist, Dr. Ilze Sillers, reviewed the record, and requested that school records be obtained in order to evaluate the possibility of mild mental retardation, which she felt was not fully supported by the existing evidence. (Tr. 175, 177). No records were found at that time, however. Dr. Sillers concluded that the plaintiff would have a "moderately limited" ability to understand, remember, and carry out detailed instructions, maintain attention and concentration, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 173-4). Another state agency psychologist, Dr. J. E. Ross, stated that Dr. Sillers' opinion was "not contraindicated," but found slightly different restrictions of a "moderately limited" ability to perform accident schedule, maintain regular attendance, be punctual within customary tolerances, and interact appropriately with the general public. (Tr. 208-10).

11

Carmack

Although the plaintiff asserts on appeal that the ALJ erred in not adopting the restrictions given by the state agency psychologists, the ALJ did frame his second hypothetical question to include the restrictions given by both psychologists, and, as previously noted, the VE testified that there would be jobs available.

The plaintiff also argues that the IQ scores obtained by Dr. Spjut satisfied the first prong of the Commissioner's Listing of Impairment (LOI) 12.05C, concerning mental retardation.

LOI 12.05C provides for disability when a claimant has "a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." While Spjut's report may be worthy of greater weight than Sillers' and Ross's non-examiner commentary vis-a-vis the issue of a current 2002 IQ score, that is not all of the Listing. LOI 12.05 defines "mental retardation" as referring "to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." The only school records submitted show that the plaintiff repeated the first grade, but include no actual grades or IQ or achievement testing (Tr. 224). The plaintiff himself apparently admitted he had not ben in "Special" classes and had formerly done all his own household chores and shopping (Tr. 65-67). Correctional Department records from

12

2001 either showed that he was alert, oriented, cooperative, answered questions readily, and was quick to comprehend (Tr. 103) or had no obvious problems with orientation, memory, concentration and insight (Tr. 113).  Hospital records from earlier in 2002 than the Spjut report descried the plaintiff as having operated a four wheeler.  (Tr. 129).

The plaintiff concedes that in Foster v. Halter, 279 F.3d 348 (6th Cir. 2001) the Sixth Circuit held that a claimant must demonstrate that his impairment meets the diagnostic description for the listed impairment, i.e., deficits in adaptive functioning during the developmental period. He correctly notes that Foster does not require a claimant to produce test scores from the developmental period in order to meet the Listing. However, he contends that the American Psychological Association's Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR)  provides that an evaluator may not make a diagnosis of mild mental retardation unless, in his opinion, it reflects a lifelong condition. There is some support for this contention, in view of language in the DSM-IV-TR stating that the onset for a diagnosis of mild mental retardation must occur before age 18. DSM-IV-TR, p. 42. However, while this may be a technical requirement, Dr. Spjut specified that the IQ scores were "considered to be indicative of his present level of functioning" (Tr. 136) (emphasis added) and that Mr. Carmack "scored in the mild mental retardation range of intelligence classification in this present evaluation" (Tr.

13

Carmack

138). This implies that his "diagnostic impression" of mild mental retardation concerns the plaintiff's current functioning. Moreover, a finding that any diagnosis or diagnostic impression of mild mental retardation by an evaluator automatically proves that the condition had an onset prior to age 18 would appear to be contrary to the holding in <u>Foster</u>, where the plaintiff had a valid full-scale IQ score of 68, but was still determined not to have carried her burden of showing onset of significantly subaverage adaptive functioning prior to age 22. <u>Foster</u>, 279 F.3d at 352, 355.

The Court concludes that substantial evidence supports ALJ's decision, which will be affirmed.

This the ___7___ day of September, 2005.

G. WIX UNTHANK
SENIOR JUDGE

14